UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS, FLORIDA

MARK HAVERKATE,

    Plaintiff,

-vs-                                        CASE NO. 2:08-cv-825-FtM-29DNF

MICHAEL J. ASTRUE,
Commissioner of Social Security,

    Defendant.
_____/

**REPORT AND RECOMMENDATION**

**TO THE UNITED STATES DISTRICT COURT**

    The Plaintiff, Mark Haverkate, appeals to the district court from a final decision of the Commissioner of Social Security [the "Commissioner"] denying his application for social security disability and disability insurance benefits For the reasons set forth below, it is recommended that this case be **REVERSED and REMANDED** pursuant to 42 U.S.C. § 405(g). The Commissioner has filed the Transcript of the proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties have filed legal memorandums.

**I.    SOCIAL SECURITY ACT ELIGIBILITY, THE ALJ DECISION, AND STANDARD OF REVIEW**

    The Plaintiff is entitled to disability benefits when he is unable to engage in substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to either result in death or last for a continuous period of

1

not less than twelve months. 42 U.S.C. §§ 423 (d) (1)(A); 1382c(a)(3)(A). The Commissioner has established a five-step sequential evaluation process for determining whether the plaintiff is disabled and therefore entitled to benefits. *See* 20 C.F.R. § 416.920(a)-(f); *Crayton v. Callahan*, 120 F.3d 1217, 1219 (11th Cir. 1997). The plaintiff bears the burden of persuasion through Step 4, while at Step 5 the burden shifts to the Commissioner. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987).

On or about December 8, 2004, the plaintiff filed an application for disability and, disability insurance benefits asserting a disability onset date of October 1, 2004. [Tr. 48-50]. The plaintiff's application was denied initially on June 21, 2005, and he filed a request for hearing on July 22, 2005. The hearing was held in Lansing, Michigan on January 15, 2008. [Tr. 375-422].

The Decision of Administrative Law Judge (ALJ) Lawrence Blatnik, dated February 27, 2008, denied the plaintiff's claims for disability and disability insurance benefits. [Tr. 9-24] At Step 1 the ALJ found the plaintiff had not engaged in substantial gainful activity since October 1, 2004, which is his alleged date of disability onset (20 C.F.R. §§ 404.1520(b) and 416.920(b)). [Tr. 48-50]. At Step 2 the ALJ found the plaintiff has the following severe impairments: heart problems, chest pain, Hepatitis C, low energy, right leg pain, forgetful-ness, inability to handle stress, shortness of breath, blurred vision and depression. [Tr. 73-86]. The ALJ further found that the plaintiff's contentions regarding total disability were not credible because the evidence of record does not support them. [Tr. 14, 20, 21]. At Step 3 the ALJ found these impairments did not meet or equal, either singly or in combination with any other impairment, any of the impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

[Tr. 23]. At Step 4 the ALJ determined the plaintiff was unable to perform his past relevant work as a heavy equipment operator. [Tr. 51]. Since the ALJ finds that the plaintiff is not disabled and has not been disabled for any time relevant to this decision, it is not necessary to consider the remaining step in the sequential evaluation process. [Tr. 21, 22] The Plaintiff's earnings record shows that the Plaintiff has acquired sufficient quarters of coverage to remain insured through March 31, 2010.

The Plaintiff sought review by the Appeals Council on May 2, 2008, along with an attachment of a "letter argument". [Tr. 7, 372-374]. The Appeals Council denied plaintiff's request for review on September 6, 2008. [Tr. 3-6]. Accordingly, the ALJ's decision became the Commissioner's final decision.

## II.    REVIEW OF FACTS

The Plaintiff was fifty-two years of age at the time of the hearing and was born on November 26, 1955. [Tr. 37]. The Plaintiff testified that he was a high school graduate and had worked as a heavy equipment operator and an RV salesman. [Tr. 51-52]. The Plaintiff alleged he was disabled as of October 1, 2004, due to a heart attack, chest pain, Hepatitis-C and depression. [Tr. 83, 389].

The Plaintiff was seen by his treating physician, Christine Blakeney, M.D., from April 2004 through October 2006. [Tr. 176-265]. Dr. Blakeney examined the Plaintiff in April of 2004, prior to his obtaining certification for truck driving. However in July 2004, the Plaintiff complained of "flu-like symptoms". The Plaintiff advised he had achy joints with chills and fever. [Tr. 256, 258-265]. It was at this time that Dr. Blakeney noted the Plaintiff to have a history of Hepatitis C. [Tr. 256].

In October of 2004, the Plaintiff was admitted to Ingham Regional Medical Center after experiencing chest pain. A cardiac catheterization revealed the Plaintiff to have a totally occluded right coronary artery. The Plaintiff was treated with angioplasty and stent placement. [Tr. 230, 237, 244]. The catheterization showed "mild left ventricular dysfunction and the left coronary system was normal." The Plaintiff was assessed by a psychologist (name illegible) on October 8, 2004, during his hospital stay. The notes reflect that the Plaintiff suffers from: [M]ajor depression, recurrent, moderate." There was also a notation that the Plaintiff was at risk for depressed mood due to his heart disease. [Tr. 242]. The Plaintiff was advised to take Zoloft and be seen on an out-patient basis for nicotine and alcohol dependency. Although the Plaintiff was also prescribed Tenorim and Plavix, he advised that he could not afford the recommended beta blockers. [Tr. 237].

During check-ups in October and November of 2004, the Plaintiff's complained of chest pain, light headedness, shortness of breath and poor sleep. Dr. Michael James, M.D. noted the Plaintiff had episodes of atypical chest pain when lifting even small items. [Tr. 225-228]. The Plaintiff showed low exercise tolerance for someone his age after having a cardio-stress test performed. Dr. James advised Dr. Blakeney by letter dated November 4, 2004, that although the Plaintiff was unable to afford or have insurance for any medications, that it was "[i]mperative that he take beta-blocker and Plavix as well as aspirin]." [Tr. 225]

Dr. Blakeney listed diagnoses of depression, chronic angina, status-post myocardial infarction, chronic Hepatitis C, and fatigue and prescribed additional Zoloft. [Tr. 220-223]. The Plaintiff's laboratory reports showed abnormal liver enzyme levels and A/G ration. The ECG showed abnormal findings. [Tr. 215-219].

On December 16, 2004, Dr. Blakeney reported the Plaintiff's complaints of chest pain with palpitations, shortness of breath, constant cold feet and always "feeling tired". [Tr. 214]. The Plaintiff stated that he was "feeling poorly" since his heart attack, that he was under a lot of stress, and that he was only drinking "1-2" beers once a week and smoking "1-2" a day.

In January of 2005, the Plaintiff reported to Dr. Blakeney that he was light headed when standing quickly, and that he became very tired when carrying groceries. [Tr. 208-209]. At that time Dr. Blakeney prescribed Lipitor, due to hyperlipidemia. The laboratory findings showed significantly elevated liver enzymes, i.e., SGPT - 130 (normal 17-67), SGOT -73 (normal 15-65). [Tr. 206-208].

On February 15, 2005, the Plaintiff underwent a consultative psychological evaluation with L.J. McCullock, M.S. NCP at the request of the State agency and a physical consultative evaluation with R. Scott Lazzara, M.D. on February 16, 2005. The Plaintiff was diagnosed with Dysthymia, Nicotine Dependence and R/O ETOH alcohol abuse/dependence. [Tr. 365]. Dr. McCulloch gave a GAF of 60 and a "Guarded" prognosis.

Dr. Lazzarra noted the Plaintiff had symptoms of shortness of breath about 2-3 times a week with chest pain or "pressure sensation" due to emotion or exerting himself. The Plaintiff also indicated the pain could occur while watching television. [Tr. 239]. The Plaintiff's blood pressure was 150/90. Medications were listed as Plavix, Atehnolol, Imdur, Nitroglycerin as needed, and Aspirin. The Plaintiff's chest showed "mild increased AP diameter, with a prolonged expiratory phase." [Tr. 340].

The next office visit appears to be December 8, 2005, when the Plaintiff reported a work attempt in sales for about two weeks. The Plaintiff advised that he had developed chest pain due to the stress involved and was unable to continue. [Tr. 205]. Dr. Blakeney noted that the Plaintiff appeared to be "very distressed" and he was going to counseling at "MSU".

On May 18, 2006, the Plaintiff was seen by Preecha Supanwanid, M.D. who informed Dr. Blakeney (per her referral) that her examination revealed carpal tunnel syndrome in both hands, the syndrome in the left hand being greater than the syndrome in the right hand and that he planned for surgery in the fall. [Tr. 200-201].

The intake assessment taken by the VAMC in July 2006, revealed the Plaintiff's enrollment in psychiatric treatment. The Plaintiff's symptoms were: feelings of emptiness; lack of joy or enthusiasm for anything; thoughts of death "a lot;" insomnia, low energy; indifferent appetite; loss of focus; poor concentration; and problems with energy and motivation. [Tr. 155-158]. The psychiatrist diagnosed "[M]ajor Depressive Disorder, Recurrent, Moderate to Severe, with a GAF score of 55." [Tr. 156].

The Plaintiff returned to Dr. Blakeney on July 10, 2006, noting that the VA was switching the Plaintiff to Effexor instead of Zoloft. The Plaintiff was depressed and feeling socially isolated. [Tr. 196-197]. Further office notes dated August 18, 2006, reveal that the Plaintiff was unable to sleep, still suffering from Major Depression (severe child abuse and psychosocial stressors) and he was in group therapy at the VA. [Tr. 180-181]. The Plaintiff was taking Atenolol, Zoloft, Imdur and Nitroglycerin. [Tr. 177]. Also, the Plaintiff had written a detailed biography of his childhood and life-time stressors. [Tr. 183-195]. Dr.

Blakeney wrote a letter to the Veterans Affairs Office of Ingham County, declaring, "Mr. Mark Haverkate is disabled due to heart disease and psychiatric illness." [Tr. 176].

On May 31, 2006, the Plaintiff was examined at the Clinton County Department of Human Services ("DHS} by psychologist, J. Keith Ostien, Ph.D., and by Anthony Meir, M.D., on June 8, 2006. [Tr. 322-o329]. Dr. Ostien completed a minimal "Formal Mental Status Exam" which revealed the Plaintiff felt he had no friends, few social contacts; no goals. The Plaintiff's activities consisted of walking, eating, taking his medications, doing odd jobs on his mobile home, watching television and cooking dinner. [Tr. 323] Based on this one interview, Dr. Ostien diagnosed Depressive Disorder, NOS (311.00) and Alcohol Syndrome, noting "moderate psychosocial stressors associated with severe financial problems, social and interpersonal isolation, multiple medical problems, and reduced functional capabilities." [Tr. 324]. Dr. Ostien gave a "guarded" prognosis and a GAF of 56. Dr. Ostien believed the Plaintiff needed assistance managing his funds and that he should enter into alcohol treatment and renew his outpatient psychological treatment.

The Plaintiff's examination also revealed his blood pressure was 150/90 and his weight was 222 pounds. Dr. Ostien diagnosed coronary artery disease, status post stent-supported angioplasty; myocardial infarction with minimal loss of cardiac output; chronic Hepatitis C; hyperlipidemia; and significant depression by history.

In September of 2006, (after helping his daughter move), the Plaintiff underwent a stress test at the VA which showed "supportive of ischemic changes". However, an angio-graphy/catheterization revealed no significant abnormalities. It was felt that the Plaintiff's chest pain was musculoskeletal in origin, related to his helping his daughter move. [Tr. 124].

On December 21, 2006, the Plaintiff was seen by Donna Wehe, RN, CNP, (VA) who opined that,

> " The veteran is unlike to be able to secure and follow a substantially gainful occupation by reason of this cardiac disability which is likely to be permanent. The veteran has a limited ability to manage stress and increased stress results in frequent episodes of chest pain." ]Tr. 174].

Ms. Wehe also reviewed the Plaintiff's medical records and noted that he had again reported his depression had worsened. [Tr. 170]. Ms. Wehe gave a very detailed account of the Plaintiff's symptoms regard his coronary artery disease, Hepatis C, and his medications , i.e.. Aspirin, Citalopram, Isosorbide, Lisinopril, Simvastatin, Trazodone and Venalfaxine, He reported drowsiness with some of these medications. [Tr. 171-172].

On January 3, 2007, the Plaintiff received a neuro-psychological evaluation at the request of the VAMC psychiatrist. Results of this testing showed "Verbal IQ=99, Performance I-86, and his Full Scale IQ=94, middle of the average range on verbal tests and low-average range on visual-spatial tests. [Tr. 108]. The Plaintiff was "deficient" on Verbal Memory and category tests. The personality inventory reflected "the presence of considerable psychological distress and the patient acknowledged that he has been depressed all his life." [Tr. 108-109].

On December 4, 2007, Dr. Blakeney completed a Mental Impairment Questionnaire. Dr. Blakeney indicated in that questionnaire that the Plaintiff lacked the mental ability to perform even the minimum demands of unskilled work.

## III. SPECIFIC ISSUES AND CONCLUSIONS OF LAW

### A. THE ALJ'S CONCLUSORY REASONS FOR REJECTING THE VA FINDING OF DISABILITY ARE INSUFFICIENT AS A MATTER OF LAW

The ALJ noted that the Veterans Administration determined that the Plaintiff is disabled but failed to accord any weight to the finding, stating:

> "[S]ocial Security Regulations provide that a decision by another governmental agency concerning an individual's disability is based upon its own rules and is not binding upon the Social Security Administration. (20 C.F.R. 404.1504). Therefore, a determination by the VA does not provide a basis for establishing "disability" within the meaning of the Social Security Act." [Tr. 22].

The Plaintiff argues that these conclusory reasons are insufficient as a matter of law.

A Veteran Administration rating of disability, while not binding, is evidence that should be given great weight. *Kemp v. Astrue*, 308 Fed. Appx. 423, 426 (11th Cir. 2009), *Olson v. Schweiker*, 663 F.2d 593, 597 n.4 (5th Cir. 1981); *Rodriguez v. Schweiker*, 640 F.2d 682, 686 (5th Cir. Unit A. 1981)[1]

In the instant case, the only reason given by the ALJ for "rejecting the VA disability rating was that the two agencies used different criteria to evaluate disability claims." The Court has held that this was "not sufficient justification for not according great weight to the disability rating of the VA...".

### B. THE ALJ COMMITTED REVERSIBLE ERROR IN FAILING TO SET FORTH THE REQUISITE GOOD CAUSE FOR REJECTING THE OPINION OF THE PLAINTIFF'S TREATING PHYSICIAN

---

[1] Decisions of the former Fifth Circuit rendered prior to October 1, 1981, are binding on the Eleventh Circuit. *Bonner v. City of Prichard, Alabama*, 661 F.2d 1206 (11th Cir. 1981).

The Plaintiff argues that the ALJ failed to show good cause for rejecting the opinion of Dr. Blakeney who had treated the Plaintiff from April 2004 through October 2006. [Tr. 176-265]. Dr. Blakeney completed the questionnaire in which she opined that the Plaintiff "[l]acks the mental ability to perform even unskilled work." [Tr. 91-96]. The ALJ accorded "no controlling weight" to this opinion because her expertise is a family practice physician and her assessment of the Plaintiff's mental abilities rests outside her area of expertise, and her assessment was based on infrequent examinations conducted about one a year. [Tr. 21]. The regulations require that the findings of the treating physician as to the severity of an impairment be accorded controlling weight if they are well-supported by medically accepted clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. § 404.1527(d)(2)(2007). In 1997, the Eleventh Circuit reaffirmed its position that the testimony of a treating physician must be given substantial or considerable weight unless "good cause" is shown to the contrary. *See Lewis v. Callahan*, 125 F.3d 1436, 1440 (11 Cir. 1997). The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error. *Id.* The court in *Lewis* further stated that it had found "good cause" to exist where the doctor's opinion was not bolstered by the evidence, where the evidence supported a contrary finding, and where the doctors' opinions were conclusory or inconsistent with their own medical records. *Id.*, *Followed, Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004).

In the Mental Impairment Questionnaire at issue, dated December 4, 2007, Dr. Blakeney described Mr. Haverkate's depressive symptoms as "presents as extremely

depressed, frustrated, difficulty sleeping,"characterized by anhedonia; decreased energy; blunt, flat or inappropriate affect; feelings of guilt or worthlessness; difficulty thinking or concentrating; and persistent disturbances of mood or affect. (Tr. 91, 92). Dr. Blakeney indicated that Mr. Haverkate's work-related mental abilities to perform unskilled work were as follows:

> *Seriously limited, but not precluded, in ability to*: carry out simple, short instructions; sustain ordinary routine without special supervision; work in coordination with or proximity to others without being unduly distracted; ask simple questions or request assistance; and be aware of normal hazards and take appropriate precautions.
>
> *Unable to meet competitive standards in ability to*: remember work-like procedures; maintain attention for two hour segments; maintain regular attendance and be punctual within customary, usually strict tolerances; make simple work-related decisions; complete a normal workday and work-week without interruptions from psychologically based symptoms; perform at a consistent pace without an unreasonable number and length of rest periods; accept instructions and respond appropriately to criticism from supervisors; get along with co-workers or peers without unduly distracting them or exhibiting behavioral extremes; respond appropriately to changes in a routine work setting; and deal with normal work stress. (Tr. 93).

Dr. Blakeney specified that the Plaintiff was *moderately limited* in maintaining social functioning and *markedly limited* in ability to maintain concentration, persistence or pace; and that he would likely miss more than four days of work per month. (Tr. 94, 96). She also indicated that "even a minimal increase in mental demands or change in the environment" would likely cause the Plaintiff to decompensate. (Tr. 95).

These mental limitations are significant, and would preclude the Plaintiff from performing the minimal mental demands of unskilled work. According to Social Security Ruling 85-15:

> The basic mental demands of competitive, remunerative, unskilled work include the abilities (on a sustained basis) to understand, carry out, and remember simple instructions; to respond appropriately to supervision, coworkers, and usual work situations; and to deal with changes in a routine work setting. A substantial loss of ability to meet *any* of these basic work-related activities would severely limit the potential occupational base. This, in turn, would justify a finding of disability because even favorable age, education, or work experience will not offset such a severely limited occupational base.

Social Security Ruling 85-15, *found at* 1985 WL 56857 (S.S.A. 1985) (Emphasis added)

The ALJ's finding that Dr. Blakeny's opinion should be rejected since she is a family practice physician and her assessment rests outside her area of expertise ignores the fact that, as the Plaintiff's long time treating physician, she was privy to the other mental health evidence of record. (Tr. 21). Dr. Blakeny also referenced the VA records in her progress notes. [Tr. 180-196].

The VA records include the diagnosis of Major Depressive Disorder, Recurrent, Moderate to Severe, with a GAF of 55, from the July 2006 evaluation. [Tr. 156]. The follow-up notes from his treating psychiatrist, dated August 31, 2006, reflect that the Plaintiff was still entertaining passive death wishes and was having a limited response to treatment medications. [Tr. 150].

In November 2006, even though the Plaintiff's psychiatrist felt he was doing better, she recorded that he continued with death thoughts, that his mood was moderately depressed, that his affect was mildly restrictive, and that he reported difficulty concentrating. (Tr. 114). In December 2006, the Plaintiff was described as "markedly dysthymic" with thoughts of suicide, and the counselor questioned whether the Plaintiff would be able to establish trusting relationships. (Tr.110, 111).

In the psychiatrist's January 2007 note, she noted that the Plaintiff was still moderately depressed with continued death thoughts and mildly restricted affect. (Tr. 106). Her subsequent note, dated April 26, 2007, revealed that the Plaintiff had been approved for VA pension benefits, and that he was not experiencing death thoughts, currently, but he was still depressed and his affect was restrictive. *Id.* The Plaintiff's medications at the time were listed as Trazodone and Effexor. *Id.*

The cited regulation acknowledges that more weight should be granted to the opinions of a treating source because:

> These [treating] sources are likely to be the medical professionals most able to provide a detailed, longitudinal picture of your medical impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations.

20 C.F.R. § 404.1527(d)(2).

### C. THE ALJ FAILED TO SUSTAIN HIS BURDEN OF ESTABLISHING THAT THERE IS OTHER WORK IN THE NATIONAL ECONOMY THAT THE PLAINTIFF COULD PERFORM BECAUSE THE ALJ FAILED TO POSE A COMPLETE HYPOTHETICAL QUESTION TO THE VOCATIONAL EXPERT

The ALJ specifically found that the Plaintiff is unable to perform any of his past relevant work. (Tr. 23). Therefore, the burden of proof shifted to the ALJ to prove that the Plaintiff is capable, considering his age, education, and past work experience, of engaging in other work. *See Welch v. Bowen,* 854 F.2d 436, 438 (11th Cir. 1988). The ALJ relied on the VE's response to a hypothetical question in finding that the Plaintiff can perform other work

13

as a janitor, housekeeper, and sorter/feeder. (Tr. 24). However, the hypothetical question upon which the ALJ relied in finding that there is other work in the national economy failed to fully encompass the functional limitations supported by the record.

The VE characterized the Plaintiff's past relevant jobs as semi-skilled, light to heavy work (Tr. 414). The ALJ first asked him to consider someone who:

> . . . cannot lift or carry more than 20 pounds occasionally and 10 pounds frequently. . . the individual could sit, stand or walk alternately six hours. The individual could not perform any work that required any prolonged strenuous activity, . . . . However, due to psychological impairments, he would be limited to simple, unskilled work with an SVP rating of two, work that involved only simple one, two, or three step instructions . . . that involved minimal contact with and direction from the supervisor, routine work that does not involve frequent significant changes or adaptations, and work that does not involve meeting production quotas, or goals, or keeping pace with coworkers . . . .

(Tr. 414, 415). The VE replied that such a person could not perform any of his past relevant work, but could perform unskilled, light jobs as a janitor in the hotel or restaurant industry, housekeeper, or as a sorter/folder in the laundry and dry cleaning industry, which he characterized as the kind of jobs that are "primarily performed usually just kind of off by yourself."(Tr. 415, 416, 418, 419, 421). Also, the VE did not think these jobs would be impacted if the person was limited to minimal contact with co-workers and only brief superficial interaction with the public, and if he could not take initiative or make independent decisions. (Tr. 416).

The hypothetical question upon which the ALJ relied did not comprehensively describe the Plaintiff's limitations. It is well settled in the Eleventh Circuit that the ALJ must pose a hypothetical question to the vocational expert which comprehensively describes the claimant's impairments. *See Pendley v. Heckler*, 767 F.2d 1561, 1563 (11th Cir. 1985).

In this case, the ALJ failed to include the mental limitations found by Dr. Blakeney in questioning the VE. Had the ALJ properly credited this opinion, the VE's testimony supports a finding of disability. The VE testified that if the person were likely to miss work three or more times a month due to "variability of both physical and psychological symptoms," he could not maintain work on a full time basis, according to the VE, because "that would exceed the customary limits which I find to be two to two and one-half days maximum per month. . . ." *Id.* Dr. Blakeney specifically opined that the Plaintiff would likely "miss more than four days of work per month. (Tr. 96).

## IV. CONCLUSION AND RECOMMENDATION

There is a reasonable possibility that a proper analysis of plaintiff's non-exertional impairments would change the administrative results. Therefore, it is respectfully recommended that the decision of the Commissioner be **REVERSED** and **REMANDED** pursuant to 42 U.S.C. § 405 (g) to allow the Commissioner to: (1) fully address the VA finding of disability; (2) accord proper weight to the opinion of Dr. Blakeney; the Plaintiff's treating physician; (3) reassess the Plaintiff's subjective complaints and credibility; (4) obtain new vocational expert testimony and pose correct and complete hypothetical questions to the vocational expert; and (5) issue a new decision based on substantial evidence and proper legal standards.

**DONE and ENTERED** in Chambers at Fort Myers, Florida, this 25th day of January 2010.

_____
DOUGLAS N. FRAZIER
UNITED STATES MAGISTRATE JUDGE

## NOTICE TO PARTIES

Failure to file written objections to the proposed findings and recommendations contained in this report within fourteen (14) days from the date of its service shall bar an aggrieved party from attaching the factual findings on appeal and a *de novo* determination by a district judge. *See* 28 U.S.C. § 636(b)(1); Fed.R.Civ.P. 72; *see also* Fed.R.Civ.P. 6; M.D. Fla. R. 4.20.

The Court Requests that the Clerk

Mail or Deliver Copies of this Order to:

All Counsel of Record

John E. Steele, U.S. District Judge

Carol Avard, Esquire/Sarah H. Bohr, Esquire, for the Plaintiff

Susan Roark Waldron, AUSA